UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTON KING, | **1:20-cv-00024-DAD-GSA-PC** |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST REMEDIES BE GRANTED** |
| vs. | |
| VALLEY STATE PRISON, et al., | |
| Defendants. | **(ECF No. 22.)** |
| | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.    BACKGROUND

Plaintiff Alton King is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.   On December 26, 2019, fifteen plaintiffs, including Plaintiff Alton King, filed a Complaint commencing this action against Valley State Prison (VSP), et al., for subjecting them to adverse conditions of confinement in violation of the Eighth Amendment by serving substandard food in Kosher meals at VSP. (ECF No. 2.) On

January 7, 2020, the court issued an order severing the fifteen plaintiffs' claims and opening new cases for individual plaintiffs. (ECF No. 1.)  Each of the fifteen plaintiffs was ordered to file an amended complaint in his own case within thirty days.  (Id.)  On February 13, 2020, Plaintiff filed a First Amended Complaint.  (ECF No. 6.)  28 U.S.C. § 1915.

This case now proceeds with Plaintiff's First Amended Complaint against defendants Raythel Fisher, Jr. (Warden, Valley State Prison) and Moosbaur (Culinary Supervisory Cook) (collectively, "Defendants")  for violations of RLUIPA and the First Amendment Free Exercise Clause; and against defendant Warden Raythel Fisher, Jr., for subjecting Plaintiff to adverse conditions of confinement and failing to protect Plaintiff, in violation of the Eighth Amendment.[1] (ECF No. 6.)

On January 14, 2022, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies.[2]  (ECF No. 22.)  On March 8, 2022, Plaintiff filed an opposition to the motion.  (ECF No. 27.)  On March 22, 2022, Defendants filed a reply to the opposition.  (ECF No. 30.)

Defendants' motion for summary judgment was submitted upon the record on March 22, 2022, without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, the court finds that Defendants' motion for summary judgment should be granted.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated at Valley State Prison in Chowchilla, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the First Amended Complaint allegedly took place. Plaintiff names as defendants Raythel Fisher, Jr. (Warden, VSP) and Moosbaur (Culinary Supervisory Cook). Plaintiff's allegations follow:

---

[1] On July 28, 2021, the Court issued an order dismissing all other claims and defendants from this case, based on Plaintiff's failure to state a claim.  (ECF No. 15.)

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 22-4.)

1. Rotten, spoiled, and otherwise unfit for human consumption [food] is and has been served in the Kosher diets at Valley State Prison. From January 1, 2017, until the current time, the meals are regularly served half-cooked (in particular, the meat). Many times a promise of replacement meal is offered by kitchen staff "if there are leftover meals available" – there usually aren't and therefore the meals are not replaced.

2. On a nearly weekly basis the Shabbat dinner is served with spoiled/rotten lunchmeat or the lunchmeat has been sliced open and exposed, which makes the produce un Kosher. Many times there is visible mold growing in the lunchmeat packages. Culinary Staff often refuse to replace the item.

3. The turkey lunchmeat served during the week often has bone chips within the denatured meat product. Plaintiff has received lacerations of the gums many times due to the bone chips mixed throughout the turkey slices.

4. The Kosher meal stock is delivered in a manner that allows for the frozen food to spoil. The meals are taken from the refrigerated delivery truck weekly and left unrefrigerated in the open sun in the docking areas for entire shifts because the culinary staff at the warehouse and main central kitchen do not want to have to inventory the meals. The average in-sun time is approximately ten hours. The meals are then inventoried and then re-frozen. When called for, the meals are again left out in the elements and served that evening. If not served, they are then once again re-frozen to be served later, albeit spoiled by then.

5. The internal components of the Kosher meals are often open and spoiled. Items that are to be sealed: applesauce, cream cheese, chips, bagels, fruit cups, etc. are often unsealed and have bacteria and/or mold openly growing upon the contents.

6. Items in the Kosher meals are often stolen by both the inmate workers and the culinary staff members, which results in these items not being available to Kosher Diet Participants (KDP's). When this happens there are no replacements or substitutions. Complaints to culinary staff are unresolved: "too bad". When the KDP's report the theft of the items they are threatened with reprisals in the form of Rules Violation Reports. This is done to chill any further speech on the issue. Inmate workers have responded to reported complaints by intentionally contaminating

3

the Kosher meals by wearing their serving gloves while using the restroom and then serving the meals with the same gloves. Complaints to Culinary staff are fruitless.

7. Kosher food is transported from the main kitchen to the Satellite Kitchens in meal carts that are used for non-Kosher foods and are often cooked in shared ovens.

8. Kosher foods/meals are supposed to be sealed but the meals are served many times with the seals broken either by failures during transportation of the meals or by intentional thefts of the contents within the meals. Meals that are cooked in shared ovens, especially with the seal broken, are rendered un-Kosher. Requests to have meals replaced that have broken seals have repeatedly been denied by Culinary staff.

9. The sole Jewish worker has been instructed by his supervisor to "get into the oven" to clean it while it is still hot. (ECF No. 6 at 6 ¶ 9.) The supervisor, Defendant Moosbaur, openly brags about his grandfather being in the German SS, and Defendant Moosbaur often intimates that he wishes "that all the Jews would have been killed in the Holocaust." (Id.) This Plaintiff, as well as the rest of the Jewish population of Valley State Prison, does not find it either amusing or acceptable to make jokes about Jews getting into a hot oven. This in Plaintiff's view is hate speech.

10. Kosher meals are served in communal areas, the dining halls, wherein the tables are both ritually unclean and literally unclean. The tables, if they are fortunate enough to be cleaned, are cleaned with the same dirty towels/rags that are used to clean all of the tables, the counters, the serving ports, the railing, and generally the majority of the dining hall areas that are contaminated with dirt and un-Kosher food.

11. The Kosher Diet Program specifies that utensils are to be provided with the meals; however, Plaintiff has NEVER received a single utensil specifically for the Kosher meals since the first day of Plaintiff's incarceration.

12. On religious fasting days the Kosher Diet Participants (KDP) are to be allowed to take their meals back to their assigned housing unit to be consumed after the fasting period has ended, but this has been obstructed by correctional officers who have required the Kosher Participants to discard the meals upon leaving the dining hall or consume them rapidly.

4

13. The institution freezes all of the meals, including the items that are to be refrigerated only, such as mayonnaise, cream cheese, jelly or applesauce and this often causes the items to either separate (mayo, cream cheese) or explode within the packaging (jelly, applesauce). When this happens the items are inedible and no replacements are given. This results in less nutrition being provided to KDP inmates, including Plaintiff.

14. Although the majority of the meals may be considered Kosher by some, it cannot be debated that meals that are manufactured with tape that clearly reads "If tape is removed, Kosher status may be voided" may be rendered un-Kosher when the tape is removed. (ECF No. 6 at 6 ¶ 14.) Plaintiff contends that at least an average of six (6) cases of meals per pallet have had the tape disturbed or removed while in the institution's warehouse. Culinary staff have refused to correct this issue.

15. The meals served do not match up with the menu approved by the Food Administrator. The menu consists of a three-week rotation. For example, each Thursday evening the menu calls for a macaroni and cheese entrée for two weeks, and in the third week, an "omelet bake" entrée. (ECF No. 6 at 6 ¶15.) The Kosher meals often do not mirror the menu. "Omelet bake" has been served for four weeks consecutively. The menu calls for "unbreaded Fish Vera Cruz," but the meal – which is supposed to be served every third week – has not been seen for over a year. Instead, a mushy fish (?) patty is served each week. Plaintiff contends that this typical noncompliance with the approved menu is not the common practice with the General Population's regular meals. This shows disparate treatment toward the Jewish Diet Program participants. Complaints regarding the disparate treatment have proved unfruitful and prison staff has subverted the policy from Sacramento by rewriting the Local Operational Procedure (OP) 10048 by adding language that explicitly allows the Kitchen Staff to basically serve whatever meals they so choose.

16. Plaintiff is aware that prison inmates do not have the luxury of choosing their meals, but the meals must be wholesome, nutritious, and within the tenets of their religious needs. This is not being provided at Valley State Prison if the Kosher meals are being rendered nonKosher

///

5

by broken seals, opened packages, missing items, rotten and/or spoiled foods, and no replacements being provided, resulting in missing nutrition.

17. The approved menu specifies "salad" to be served with each evening meal. (ECF No. 6 at 7 ¶ 17.) VSP kitchen staff have substituted shredded cabbage for "salad," which they contend is an approved substitution, although they have never offered written documentation of an approved substitution list. They have now included two dirty radishes wrapped in plastic wrap as a substitution for "salad." Plaintiff submitted three (3) CDCR Form 22 Inmate/Parolee Request for Interview, Item or Service forms to the main kitchen staff regarding the radishes. The first response from Hernandez [not a defendant] stated: "Radishes should only be served as a Kosher Vegetable – we will look into it." (Id.) The second response from Hernandez stated: "the Kosher salad will only be substituted with cabbage mix. Radishes are only to be served as a fresh vegetable." (Id.) The third response came from Defendant Moosbaur stating: "Institution menu may vary from the menu based on approved substitutions. This applies to both the Kosher meals themselves, as well as the side salads." (Id.) Dirty radishes continue to be served. This is not Kosher for the following reason: dirty unwashed food is not Kosher, it must be washed. This cannot be done by the KDP inmates because they are not provided with a Kosher sink or a Kosher vegetable brush with which to clean the two dirt encrusted radishes. Another local operational procedure disallows inmates from taking their food back to their housing units. Kosher participants could cure the deficiency IF they were allowed to take their meals back to their housing unit and wash their dirty radishes. Instead they must throw the radishes in the trash since they cannot be eaten dirt-encrusted and the inmates do not have the ability to wash them in the dining halls where they must sit on dirty un-Kosher tables to consume their "Kosher" meals. (Id.) In this instance, Plaintiff is effectively denied both a salad or two radishes and the nutrition from those items. Culinary staff have refused to correct this issue.

18. Fresh Vegetable. The Kosher menu calls for fresh vegetables to be served with the Kosher meals. This often consists of a Jalapeno pepper which has not been adequately washed, if at all, and not wrapped in any plastic wrap. This leaves the outer skin of the Jalapeno exposed to the handling of the kitchen workers with unwashed hands and/or dirty serving gloves. Again,

as with the radishes, the Kosher participants are not provided with a Kosher sink or Kosher vegetable brush with which to wash the Jalapeno pepper.

19. Fresh Fruit. The Kosher menu calls for fresh fruit to be served with the Kosher meals. This often consists of an apple which has not been adequately washed, if at all, and not wrapped in any plastic wrap. This leaves the outer skin of the apple exposed to the handling of the kitchen workers with unwashed hands and/or dirty serving gloves. As with the radishes and Jalapenos, the Kosher participants are not provided with a Kosher sink or Kosher vegetable brush with which to wash their fruit.

20. Operational Procedure (OP) 10048 dictates: "All KDP inmate participants will generally eat together on the same table. Non-KDP inmates will not sit with these inmates on the same table." (ECF No. 6 at 10 ¶ 20.) This has and continues to be a bone of contention with the KDP participants. There is neither monitoring nor any enforcement of this procedure. On a nearly daily basis, non-KDP participants sit at the same tables as Kosher Diet participants and complaints to staff have remained unresolved. It cannot be incumbent upon the Kosher participants to enforce the regulations with other inmates. The mixing of Kosher and non-Kosher foods at the same tables breeds the potential of almost certain cross-contamination of the Kosher foods. In addition, the Jewish Kosher participants are required by Jewish laws to recite certain prayers at mealtimes, and this is why the policy states that the KDP participants will generally eat together at the same tables. When non-Kosher inmates sit at the same tables as the Kosher Diet participants, the KDP inmates are sometimes pressured to share some of their Kosher food items, and this too is against policy. Repeated attempts to have these issues corrected by Culinary Staff and correctional officers have proved fruitless. Correctional Officer (C/O) Keene [not a defendant] has taken pleasure in laughing while she forced Kosher participants to mix with non-Kosher inmates, stating, "So they think they're fu**ing special" and "I'm tired of these fu**ing Jews sitting all over the place." (ECF No. 6 at 10 ¶ 20.) Plaintiff has heard this with his own ears.

21. Plaintiff is informed and therefore believes and asserts that Anderson [not a defendant], a kitchen worker, intentionally contaminated and rendered Kosher meals un-Kosher

by handling his penis and wiping the external components of Kosher meals with the sweat from his genitalia.

**Causes of Action**

**1) Claim 1; U.S. Constitution, 1st Amendment:**

**a) Free Exercise of Religion:**

Plaintiff is daily denied the ability to observe the tenets of his faith regarding eating Kosher non-contaminated foods. The Defendants have failed to provide Kosher meals that are within the tenets of Plaintiff's religion.

22. CDCR and VSP [not defendants] are responsible for providing for the religious needs of the inmates in their care, such as Plaintiff. The Statewide Religious Review Committee (Does #1, #2, and #3) [not defendants] are responsible for the creation and implementation of statewide programs to meet the needs of inmates requiring a Kosher diet which is healthy, appropriate to one's faith, wholesome, and nutritious. But after numerous problems with rotten/spoiled, opened, and inedible foods, Defendants continued year after year to ignore the issues and retain the same vendor that was responsible for some of the deficiencies. Defendants have violated Plaintiff's First Amendment right.

23. Fisher [not a defendant] personally reviewed the administrative appeals and made intentional decisions to either deny or ignore the problems as they were reported to him via the grievance process. Fisher has violated Plaintiff's First Amendment right to free exercise of religion.

24. Anderson [not a defendant] intentionally rendered an unknown amount of Kosher meals non-Kosher by wiping the sweat of his genitalia onto the meals. In this fashion, Anderson has violated Plaintiff's First Amendment right to free exercise of religion by unKoshering meals intentionally.

25. Anguiano [not a defendant] repeatedly refused to replace spoiled or opened meals or items within the meals when they were reported to him by Plaintiff. As a direct result, Plaintiff was denied a wholesome and nutritious Kosher meal on each of these occasions. Anguiano has therefore violated this Plaintiff's First Amendment right to free exercise of religion.

26. C/O Keene [not a defendant] repeatedly forced Kosher Diet participants to sit and eat with non-Kosher inmates, causing cross-contamination and strife between the two. The denial of following the Operational Procedure 10048 and the denial of allowing the KDP participants to remain separate has resulted in cross-contamination of Kosher foods and thus a violation of Plaintiff's First Amendment right to free exercise of religion.

27. Mohktar [not a defendant], while employed as Food Administrator, received and reviewed numerous complaints via CDCR Form 22 Inmate/Parolee Request for Interview, Item or Service as well as numerous CDCR Form 602 appeals regarding the deficiencies with the food, i.e., missing items and rotten and spoiled food, but did absolutely nothing to correct the problems. Mohktar had to have known that failure to correct the issues presented would result in the deprivation of the Kosher Diet participant's right to free exercise of religion. As a direct and proximate result of Mohktar's failure to correct the issues presented, Plaintiff's First Amendment right to free exercise of religion has been violated.

28. Hernandez [not a defendant], employed as Food Manager, received and reviewed numerous complaints on CDCR Form 22's and CDCR 602's regarding the deficiencies with the food and the failure of the Culinary Staff under his authority to replace missing of spoiled/rotten items from the meals, yet Hernandez did nothing to correct the problems. Hernandez had to have known that failure to correct the issues presented would result in the deprivation of the Kosher Diet participant's right to free exercise of religion. As a direct and proximate result of Hernandez's failure to correct the issues presented, Hernandez has violated Plaintiff's First Amendment right to free exercise of religion.

29. J. Knight [not a defendant], employed as Appeals Examiner for CDCR Office of Appeals, received and reviewed administrative appeals regarding the issues presented in this complaint and made intentional decisions to deny the granting of appeals that would have cured the deficiencies. Knight has violated this Plaintiff's First Amendment right to free exercise of religion with regard to Plaintiff's ability to observe the tenets of his religion regarding Kosher meals.

///

30. Defendant Moosbaur, employed as Culinary Supervisory Cook at VSP, received complaints via CDCR Form 22 process and deliberately failed to correct issues regarding missing items, spoiled/rotten foods, and improper and inedible substitutions within the Kosher meals. Defendant Moosbaur has violated Plaintiff's First Amendment right to free exercise of religion by providing substitutions within Kosher meals that are inedible, and failing to replace items that are rendered un-Kosher by being spoiled/rotten or opened.

### b) Retaliation for exercise of protected First Amendment activity

31. In response to Plaintiff's First Amendment right to redress grievances with government officials, state actors took the following actions deliberately against Plaintiff in an effort to chill Plaintiff's exercise of protected activity. These actions did not serve a legitimate penological purpose and were not done in the interest of maintaining safety and security of the institution.

32. C/O Keene [not a defendant], in response to being reported to the facility sergeant regarding failure to follow procedure, responded by intentionally disturbing Plaintiff's prayers and micromanaging seating arrangements in the dining halls that ensured that Kosher Diet Participants were forced to sit and eat with non-Kosher Diet participants. C/O Keene also used demeaning language and comments towards the Kosher Diet participants, Plaintiff included.

33. Mohktar [not a defendant], in response to receiving multiple complaints with regard to the issues presented in this complaint, resolved himself to have the contents of the Kosher salads reduced and made it readily known that this was because of the numerous complaints he received about the issues with the Kosher meals. Mohktar intimated this fact to two KDP participants who worked for him at the time, inmate King T83180 and inmate Thomas V35835. Plaintiff contends that Mohktar's actions were retaliatory, did not further any legitimate penological goals, were arbitrary and capricious and thus violated Plaintiff's protected First Amendment activity.

34. Defendant Moosbaur. Plaintiff is informed and thereupon believes and alleges that Defendant Moosbaur is a vocally proud Neo-Nazi and told his workers, inmates such as Israel Garcia-Trevino #AY4957 and other "line backers" that they no longer had to wear gloves or hair

nets while working with the Kosher foods, and gave them the Kosher foods instead of replacing the spoiled meals that were given to the Kosher Diet participants. Defendant Moosbaur's actions did not further any legitimate penological goals, were unsanitary, were done in retaliation of complaints received regarding the Kosher meals, and were done with the intent to chill KDP inmates' protected First Amendment activity. Defendant Moosbaur's retaliatory actions directly adversely affected this Plaintiff.

35. Anguiano [not a defendant], in response to Plaintiff's attempts to have spoiled meals replaced, openly accused the KDP participants of fraud and demanded that each Sabbath evening meal be opened in his presence and when found to be spoiled, still refused to replace the meals. This was done in a harassing and embarrassing manner and was meant to chill any further KDP participant complaints regarding rotten/spoiled, inedible, or opened food items that were thus rendered un-Kosher. Anguiano's activities were retaliatory and did not further any legitimate penological goals, and were done with the intent to chill any further protected First Amendment activity by Plaintiff.

**2) Claim 2: U.S. Constitution, Eighth Amendment**

**a) Nutritionally Deficient Kosher Diet**

36. Inmates are not required to choose between two rights that they are entitled to exercise. They must not have to choose between either observing the tenets of their religion or eating a nutritional meal. Inmates have the right to do both. Plaintiff has chosen to observe the tenets of his religion and one of those tenets requires that Plaintiff maintain a Kosher diet. Food is a basic necessity of life and must be nutritionally adequate and wholesome.

37. For at least the past three years, Defendants have routinely denied this Plaintiff adequate nutrition when they intentionally refused to replace spoiled/rotten foods, missing foods, and un-Kosher foods. This deprivation was not the result of any emergency measures and was not short term in its duration. The failure to replace the food items whether spoiled, missing, or rendered un-Kosher, makes a normally nutritionally adequate meal inadequate by reason of missing nutrition. One cannot glean nutrition from air.

///

### b) Unsanitary Meals

38. The majority of the meals served during the times mentioned in this complaint were both ritually and literally contaminated which rendered them un-Kosher. From the serving environment to the intentional contamination by workers or under the direction of Culinary Staff, the Kosher meals were rendered un-Kosher. Dirty tables, intentional contamination by Anderson, directing kitchen workers not to have to wear gloves while working with the Kosher meals by Defendant Moosbaur, and failure to follow proper protocols have resulted in the serving of unsanitary meals.

### c) Mental Health

39. The failures of the Kosher diet Program have caused this Plaintiff great mental distress and anguish. To discover that an inmate kitchen worker is intentionally contaminating Kosher meals by wiping the internal and external components of the Kosher meals with the sweat from his genitals is sickening and horrifying. And then to further Plaintiff's anguish, learning that this was reported to Culinary Staff but was summarily ignored and not corrected is further unfathomable. Defendant Moosbaur and C/O Keene's anti-Semitic comments and actions, Anguiano's inferences that Kosher Diet participants' actions are fraudulent when trying to get rotten food replaced or missing food items replaced, are further fuel to mental distress and anguish. A Kosher Diet participant is generally trying to better his or herself by following the tenets of his or her religion and following the precepts of their creator. But at what cost should this be?

### d) Conditions of Confinement

40. The conditions of confinement with regard to the Kosher Diet program are grossly disproportionate to the crimes. As outlined in this complaint, the treatment of participants in the Kosher Diet Program, including Plaintiff, are extremely poor, unconstitutional, and outright egregious. Plaintiff has suffered emotionally, spiritually, physically (hunger), and by the deprivation of a guaranteed Constitutional right. These conditions continue daily and do not further any legitimate penological goals. Repeated attempts by Plaintiff as well as other KDP participants to have the conditions corrected have fallen on deaf or deliberately indifferent ears.

The circumstances were permitted to continue as a coordinated effort by Defendants who chose to ignore the problems. The discriminatory animus shown by Defendant Moosbaur and Anderson [not a defendant] was egregious and representative of the daily battle by Plaintiff to overcome anti-Semitic prejudices. Each subdivision of Claim 2 taken individually may or may not rise to the level of a cognizable Eighth Amendment right deprivation; however when taken together as a whole, Plaintiff contends they do indeed state a cognizable Eighth Amendment Claim.

### 3) Claim 3: U.S. Constitution Fourteenth Amendment

#### a) Significant Hardship

41. Daily hunger is a significant hardship, as with nutritional deficiency. When Plaintiff cannot eat because of the foods being contaminated, spoiled, or missing, it causes a hardship. In instances where Plaintiff is forced to either eat or suffer hunger pangs, eating is essentially ineffective because of the nutrition deficiency of not receiving a whole meal.

42. Plaintiff cannot supplement his meals with food purchased from the "Canteen" as many other Kosher Diet Participants have done, because this Plaintiff is indigent and Canteen shopping occasions are very few and far between. Plaintiff does receive quarterly packages provided by family members, but having to purchase food to supplement prison food places an undue hardship on the family members, so Plaintiff does not seek to supplement his prison food with inmate package items.

#### b) Discrimination

43. Plaintiff has suffered discrimination from Defendants. Members of the State Religious Review Committee of the CDCR [not defendants] have made decisions designed to intentionally discourage participation in the Kosher Diet Program and deny nutritionally adequate meals by their intentional choice to procure meals from a known problematic source. Does 1, 2, and 3, respectively [not defendants].

44. Anderson [not a defendant] actively hates against Jewish inmates and others with Judaist beliefs by contaminating the Kosher meals intentionally with the intent to disrupt their Kosher observance. Plaintiff is informed and thereupon believes and asserts that Anderson refers

///

to the Kosher Diet participants as "fake a** mother fu**ers," and his actions are apparently condoned by the Culinary Staff who have failed to correct his discriminatory behavior.

45. C/O Keene [not a defendant] displays her discrimination with her words and her actions, stating: "these fu**ing Jews think they're special" and "I'm tired of these fu**ing Jews sitting all over the place," and intentionally forcing Kosher observant inmates to sit with non-Kosher observant inmates in violation of Operational Procedures. (ECF No. 6 at 18 ¶ 45.)

46. Mohktar [not a defendant] discriminated by intentionally reducing the nutritional content of the KDP inmates' food in response to their complaints about the deficiencies of the food and food handlers.

47. Defendant Moosbaur, the most vocally hateful and discriminatory of all Defendants, openly brags that his family murdered the Jewish population in Germany, expresses his desire to kill even more Jews, and uses his position to intentionally disrupt the Kosher Diet Program by having the meals turn rotten in the elements, allowing his workers to open and intentionally contaminate meals and steal the contents.

48. Hernandez [not a defendant] and Defendant Moosbaur discriminate against Plaintiff and other KDP Participants by intentionally ignoring the Approved Menus which are distributed by the Food Administrator of the CDCR and instead opting to serve the wrong meals or the same meals repeatedly. This occasionally happens due to circumstances beyond their control and would normally be acceptable as an exception to the rule, however this has become the norm rather than the exception due to discriminatory deliberate indifference against the Plaintiff and other Kosher Diet Program participants. There is a clear disparate treatment between General Population and Kosher diet meal substitutions.

**4) Claim 4: State Tort Claims Act (CTCA)**

49.     **a)** This court has jurisdiction over the State tort Claims due to the supplemental jurisdiction over the issues presented in the complaint.

        **b)** There is no 11th Amendment immunity because Plaintiff is a citizen of the State of California. Further, any immunity that may have existed is forfeited under the CTCA

///

since Plaintiff filed under the Act and filed this complaint in compliance with the CTCA, and was instructed to file this complaint by the Government Claims Board.

    **c)** Defendants and each of them are sued jointly and severally for all state tort claims, in both individual and official capacities.

    **d)** CCR Title 15 § 3043.2(d)

    "All institutions will adhere to standardized departmental Kosher diet program menus and approved procedures for purchasing, preparing, and serving Kosher meals."

50. Plaintiff contends that, as outlined in this complaint, Hernandez [not a defendant] and Defendant Moosbaur have failed to adhere to the standardized departmental Kosher diet menus . . . and approved procedures for serving Kosher meals. Thus, Plaintiff's rights under this California State Regulation have been violated, repeatedly.

    **e) CCR Title 15 § 3054.2(g):**

    "The Kosher Diet Program shall be administered in accordance with the provisions of this Article". [3054.2 (a) – (g)]

51. Plaintiff contends that the Defendants have not administered the Kosher Diet Program in accordance with the provision of the Article. Thus, Plaintiff's rights under this California State Regulation have been violated, repeatedly by all Defendants.

    **f) CCR Title 15 § 3050(a):**

    "Each inmate shall be provided a wholesome, nutritionally balanced diet. Nutrition levels shall meet the Recommended Dietary Allowances and Dietary Reference Intakes as established by the Food and Nutrition Board of the Institute of Medicine, National Academy of Science".

52. Plaintiff contends that Defendants have not provided wholesome and nutritionally balance meals that meet the Recommended Dietary Allowances as described above because they have served meals that contain rotten/spoiled food which they will not replace and which Plaintiff has had to throw away and because they have served meals that were either opened and rendered

///

15

un-Kosher or missing items from the meals that were not replaced. Thus, Plaintiff's rights under this California State Regulation have been violated by all Defendants.

**g) CCR Title 15 § 3052(a):**

53. Pursuant to § 3952(a) the standards for sanitation shall meet the requirements set forth in Health and Safety Code Sections 11395 through 114259.4 (California Retail Food Code (CFC)). Plaintiff contends that the sanitation prescribed in the aforementioned sections is not being adhered to as gloves are not changed, hands are not washed after using the restroom, trays are dirty, and tables are unclean or not cleaned properly. Plaintiff's rights under this California State Regulation have been violated by all Defendants on a daily basis.

**h) CCR Title 3, Div 2 Sub 1, Article 2 § 901.1**

54. Pursuant to the above referenced Section (Condemnation and Retention of Product), products are to be retained and not served if they are not edible. At VSP the packaging of the Kosher meals is disturbed to a great extent, ripped or cut open, with bacteria and mold growing inside what are supposed to be vacuum sealed products. These items are distributed to the Kosher Diet Program inmates regardless of their condition, in particular the lunchmeats and pastries. Plaintiff contends that violation of the above State Regulation has harmed Plaintiff and Plaintiff seeks compensatory damages from all Defendants.

**i) CCR Title 3, Div 2, Ch 4, Sub 2, Article 45 § 1180.43(b)(2)(D)**

55. Pursuant to the above referenced section (Meat Inedible by Humans – Identification) to identify meat that is inedible by humans, one factor is "coarsely ground hard bone incorporated with the meat." (ECF No. 6 at 21 ¶ 55.) Plaintiff has attested in Paragraph 3 of this complaint that the turkey lunchmeat served during the week often has bone chips within the denatured meat product. Plaintiff has received lacerations of the gums many times due to the bone chips throughout the turkey slices. Plaintiff contends that CDCR and VSP [not defendants] have failed to provide lunchmeat that is edible and Plaintiff has been harmed by their failure to do so. Plaintiff has been injured and seeks compensatory damages.

///

///

**California Civil Code § 52.1(b)**

56. The lack of nutrition, whether by absence thereof or failure to replace missing nutritional items from the meals, harm from dangerous foods such as turkey lunchmeat with bone chips that lacerate gums, retaliatory actions by Culinary Staff, inmate workers, and administrative officials, allows for damages in the amount of $25,000 per incident. While exercising a protected right, Plaintiff has suffered at the hands of the Defendants, all of them, as outlined in the complaint.

57. The tortious actions of the Defendants have caused harm to Plaintiff and as such Plaintiff is entitled to compensatory and punitive damages.

## IV.     Request for Relief

Plaintiff requests the following relief:

1) Declaratory; stating that Defendants have violated Plaintiff's Constitutional right and/or State Law Rights for each count substantiated by the court or jury.

2) Compensatory; In the amount of $36,000 ($1,000 per month for each of the last 36 months) per Defendant for violations of Plaintiff's Constitutional rights and/or state law rights as substantiated by the court or jury.

3) Punitive; In the amount of $25,000 from Defendants jointly and severally for each violation of Constitutional rights and/or State Law rights as substantiated by the court or jury.

4) Injunctive Relief; For the court to order Defendants to:

   a) adhere to all regulations, laws, policies and procedures regarding the Kosher Diet Program within the California Department of Corrections and Rehabilitation.

   b) Adhere to all California Retail Food Codes ensuring that only wholesome, nutritional, and edible foods are served.

   c) Make available at each meal replacement food in the event that food items are rotten/spoiled, missing, opened, or otherwise rendered un-Kosher.

///

This must not be subjective and should favor the person who consumes the meal.

## IV.   SUMMARY JUDGMENT BASED ON EXHAUSTION

### A.   <u>Legal Standards</u>

#### 1.   <u>Statutory Exhaustion Requirement</u>

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  <u>Jones v. Bock</u>, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). However, a prisoner who has fully complied with the PLRA's exhaustion requirement need not file an entirely new federal case simply because they had not exhausted when they filed their original federal complaint.  <u>Jackson v. Fong</u>, 870 F.3d 928 (9th Cir. 2017); *accord* <u>Saddozai v. Davis</u>, --- F.4th ---, 2022 WL 1613616 (9th Cir. May 23, 2022.)  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself." <u>Bock</u>, 549 U.S. at 218 (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)). <u>See</u> <u>also</u> <u>Marella v. Terhune</u>, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'").  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. <u>Woodford</u>, 548 U.S. at 90.  However, the Ninth Circuit has made clear:  A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm

being grieved.  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  Id.

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress.  To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.  Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing Bock, 549 U.S. at 218).  The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.  Id; Griffin, 557 F.3d at 1120; see also Bock, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that they may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation.").  Thus, in this case, the grievance process used at Valley State Prison where Plaintiff was incarcerated defines the boundaries of proper exhaustion.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if they establish that the existing administrative remedies were effectively unavailable to them. See Albino v. Baca (Albino II), 747 F.3d 1162, 1172-73 (9th Cir. 2014). When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable."  Sapp, 623 F.3d at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance).  In such a case, "the inmate cannot pursue the necessary sequence of appeals." Sapp, 623 F.3d at 823.

///

///

///

2.   **California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System**

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2017).  The process is initiated by submitting a CDCR Form 602.  Id. at § 3084.2(a) (2017).

On January 28, 2011, California prison regulations governing inmate grievances were revised.  Cal.Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal.Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed.  Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3).

Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to them. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal.Code Regs. tit. 15, § 3084.2(a)(3).  Further, the inmate must "state all facts known and available to them regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested." Cal.Code Regs. tit. 15, § 3084.2(a)(4). Inmates now have thirty calendar days to submit their appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal.Code Regs. tit. 15, § 3084.8(b).

At the time of the events giving rise to the present action in 2016-2019, California prisoners were required to submit appeals within thirty calendar days of the event being appealed. Cal.Code Regs. tit. 15, § 3084.8(b).  The process was initiated by submission of the appeal to the first formal level.  Id. at § 3084.7(a).  Three levels of appeal were involved, including the first formal level, second formal level, and third formal level.  Id. at § 3084.7.  A final decision at the third level[3] of review satisfied the exhaustion requirement under 42 U.S.C. § 1997e(a).  Id. at § 3084.7(d)(3); see Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005).

Until June 1, 2020, when California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487, California state prisoners were required to use this process to satisfy § 1997e(a) and exhaust their claims prior to filing suit.  Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to them. Butler, 397 F.3d at 1183; Bennett, 293 F.3d at 1098.

### 3.     Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion.  Bock, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  On April 3, 2014, the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a).  Albino II, 747 F.3d at 1168–69. Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[4] or (2) a motion for summary judgment under Rule 56.  Id.  If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e).  Bock, 549 U.S. at 223–24; Lira, 427 F.3d at 1175–76.

---

[3] The third level is sometimes known as the Director's level.

[4] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint."  Albino II, 747 F.3d at 1162.

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Albino II</u>, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.")  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party." <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011).  The court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." <u>Albino II</u>, 747 F.3d at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in their particular case that made the existing and generally available administrative remedies effectively unavailable to them." <u>Id.</u>  The ultimate burden of proof remains with defendants, however. <u>Id.</u> "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." <u>Id.</u> at 1166.

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that

///

this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## V.    UNDISPUTED FACTS

In accordance with Local Rule 260(a), Defendants submit the following Statement of Undisputed Facts with references to the supporting evidence.   Unless otherwise noted, the following facts are undisputed by the parties, or as determined by the court based on a thorough review of the record. [5]

| DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1.    Plaintiff King was part of a group complaint in Case No. 1:19-cv-01797- GSA (PC), dated December 20, 2019. The group complaint was scanned and e- mail by CDCR to the Court on December 23, 2019, and was filed on the Court docket on December 26, 2019.  (Complaint, ECF No. 2.) | 1. Undisputed. |
| 2.  On January 7, 2020, the Court issued an order severing the claims in Case No. 1:19-cv-01797-GSA (PC), and opening the present | 2. Undisputed. |

---

[5] These facts are taken from Defendants' Statement of Undisputed Material Facts. (ECF No. 22-1.)  On March 8, 2022, Plaintiff submitted his response to Defendants' Undisputed Facts.  (ECF No. 27 at 15.)  The Court has considered all declarations and exhibits submitted in support of the parties' statements.  However, Plaintiff did not provide cites to evidence supporting his responses to Defendants' Undisputed Facts.  As such, Plaintiff did not properly address Defendants' Statement of Undisputed Material Facts.  Local Rule 260(b).  Accordingly, the court may consider Defendants' assertions of fact as undisputed for purposes of this motion. Id; Fed. R. Civ. P. 56(e)(2).  However, in light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," Estelle, 429 U.S. at 106. Rule 8(e) of the Federal Rules of Civil Procedure provides that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.  In his opposition to the motion for summary judgment filed on March 8, 2022, Plaintiff responded to and disputed some of Defendants' Undisputed Facts.  (ECF No. 27 at 15.)  The Court has taken Plaintiff's disputes with Defendants' Undisputed Facts into consideration in its analysis.

| | |
|---|---|
| action by Plaintiff King, Case No. 1:20-cv-00024-DAD-GSA (PC).   (Order Severing Plaintiffs' Claims, ECF No. 1.) | |
| 3.  Plaintiff King filed an amended complaint in this action on February 13, 2020. (Amended Complaint, ECF No. 6.) | 3.  Undisputed. |
| 4.  Inmate Group Appeal Log No. VSP-19-02294, alleging substandard Kosher meals at Valley State Prison, was received by the institutional-level Grievance Office on November 14, 2019.  (Agostini Decl. ¶ 9 & Exs. B, G.) | 4.  Disputed.  This Appeal is irrelevant, as the Complaint Substance is in relation to Log #VSP-B-19-01146.[6] |
| 5.  Plaintiff King was a signatory on Inmate Group Appeal Log No. VSP-19-02294. (Agostini Decl. ¶ 9 & Exs. B, G.) | 5.  Undisputed but irrelevant as stated above. |
| 6.  The Office of Appeals issued its third level review decision denying Group Appeal Log No. VSP-19-02294 (Third Level Review Log No. 2003046) on July 2, 2020.   (Moseley Decl. ¶¶ 7, 9 & Exs. A, D.) | 6.  Undisputed but irrelevant as stated above. |
| 7.   Plaintiff King submitted eight CDCR inmate grievances while housed at Valley State Prison from 2013 to the present.  (See Agostini Decl. & Exs. B–I; Moseley Decl. & Exs. A–E.) | 7.  Undisputed. |

---

[6] Plaintiff has not disputed that UF No. 4 is true, but rather argues that it is irrelevant. Therefore, UF No. 4 is undisputed.

| | |
|---|---|
| 8.   Group Appeal Log No. VSP-19-02294 (Third Level Review Log No. 2003046) is the only CDCR inmate grievance submitted by Plaintiff King that contains claims regarding an allegedly substandard Kosher diet at Valley State Prison from 2017 to the present. (See Agostini Decl. & Exs. B–I; Moseley Decl. & Exs. A–E.) | 8.   Disputed.   Plaintiff's original Group Appeal Log No. VSP-B-19-01146, was submitted under the name, NATHANIEL GANN-G64542, on May 26, 2019.  A total of fifteen named plaintiffs.[7] |

## VI.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment under Federal Rule of Civil procedure 56 on the grounds that there is no genuine dispute that Plaintiff failed to exhaust his administrative remedies against Defendants for his claims against them prior to filing suit, as required by the PLRA, 42 U.S.C. § 1997e(a), and Defendants are therefore entitled to summary judgment in their favor.

Defendants' evidence consists of the verified Complaint and verified First Amended Complaint (ECF Nos. 2, 6); Undisputed Facts (ECF No. 29-1), separately filed declarations of Valley State Prison Grievance Coordinator C. Agostini (ECF Nos. 22-2 & 30-1) and Chief of the Office of Appeals H. Moseley (ECF No. 22-3), with exhibits including copies of Plaintiff's appeals, responses thereto, and other prison records; and the Court's record.

///

///

---

[7] A material fact is genuinely disputed if the evidence is such as would permit a reasonable fact finder to return a verdict for the nonmoving party. Fed. Rules Civ. Proc. Rule 56(a). Here, the parties' dispute of fact in UF No. 8 is about whether Group Appeal #VSP-19-02294 is the **only** grievance submitted by Plaintiff regarding the Kosher diet at VSP.  This dispute is not material for purposes of the court's analysis of Defendants' motion because Plaintiff has provided evidence that there was **another** Group Appeal #VSP-B-19-01146 to consider, which Defendants acknowledged and discuss in their reply to Plaintiff's opposition (ECF No. 30).  Therefore, UF No. 8 is not a genuinely disputed material fact and does not show that there exists a genuine issue for trial.

### A.      Defendants' Position

Defendants argue that Plaintiff's prison records confirm that his only prison grievance related to Kosher meals at VSP did not receive a decision at the final level of review until six months after he filed suit. (See Agostini Decl. & Exs. B–I; Moseley Decl. & Exs. A–E; DSUF ¶¶ 1-8.)  Because prisoners must exhaust their remedies prior to filing suit, and not during the pendency of the suit, Defendants contend that dismissal is required here.

Defendants' evidence shows that before June 2020, Plaintiff submitted seven appeals at the first level of review while at VSP, and he submitted another grievance after June 2020. (Agostini Decl. Ex. B.) The appeals process was available to Plaintiff confirmed by the fact that he used the process frequently at VSP.  (See Agostini Decl. & Exs. B–I; Moseley Decl. & Exs. A–E.) Only one of the appeals, Group Appeal Log No. VSP-19-B-02294, submitted to the VSP Grievance Office on November 13, 2019, concerned Kosher meals at VSP.  (Agostini Decl. ¶ 9 & Exh B.)  The Grievance Office partially denied the grievance at the first level of review on December 11, 2019, and at the second level of review on February 20, 2020. (Id.) Plaintiff appealed this decision to the third-level Office of Appeals, which received the appeal on March 12, 2020, and denied it on July 2, 2020 (Moseley Decl. ¶ 9.)

Plaintiff filed suit on December 26, 2019, before the response from the second level of review was issued.  (See Complaint, ECF No. 2; see also Order Severing Plaintiffs' Claims, ECF No. 1; DSUF ¶ 1).  The third level response for this appeal was not issued until July 2, 2020, six months after Plaintiff filed his complaint in December 2019.  (Complaint, ECF No. 2; Moseley Decl. & Exs. A, D; DSUF ¶¶ 1, 5.)  Even Plaintiff's amended complaint filed February 13, 2020, pre-dates the  third-level response. (Am. Compl., ECF No. 6; Moseley Decl. & Exs. A, D; DSUF ¶¶ 3, 5.)  The Court  notes that the filing of Plaintiff's first amended complaint also predates the denial at the second level of appeal which occurred on February 20, 2020.

### B.      Defendants' Burden

The court finds that Defendants have carried their initial burden to prove that there was an available administrative remedy and that Plaintiff failed to exhaust that remedy.  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust the

available remedies for his claims against Defendants, or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

**C.   Discussion**

In opposition to Defendants' motion for summary judgment, Plaintiff argues that he exhausted his administrative remedies for his claims in this case with Grievance Number VSP-B-19-01285/1908537, on October 8, 2019, before he filed his First Amended Complaint.  (ECF No. 27 at 2 ¶ 3 & Exh. A.)

Plaintiff's evidence includes his responses to Defendants' Undisputed Facts (ECF No. 27 at 15), a copy of Grievance Number VSP-B-19-01285/1908537 (ECF No. 27 at 5-8 (Exh. A)), and his verified Complaint and verified First Amended Complaint (ECF Nos. 2, 6).

**1.   Plaintiff's Claims in the First Amended Complaint**

There is no dispute that this case now proceeds with the First Amended Complaint, filed on  February 13, 2020, on Plaintiff's claims against defendants Warden Raythel Fisher, Jr. and Culinary Staff Member Moosbaur for alleged violations of the RLUIPA and violations of the First Amendment Free Exercise Clause; and against defendant Warden Raythel Fisher, Jr. for alleged adverse conditions of confinement in violation of the Eighth Amendment, and for alleged failure to protect plaintiff in violation of the Eighth Amendment.  (ECF No. 6.)

**2.   Plaintiff's Grievances/Appeals**[8]

The alleged incidents at issue in this case took place between **January 1, 2017**, (ECF No. 20 at 3 ¶1), and **December 26, 2019**, when Plaintiff filed the initial Complaint in this case, (ECF No. 2).  The parties do not dispute that an administrative remedy process was available to Plaintiff at VSP and that he was aware of it and used it.

**a.   Appeal #1**

Defendants argue in their motion for summary judgment that Plaintiff filed only one appeal that concerned Kosher meals at VSP, Group Appeal Log No. VSP-19-B-02294, submitted

---

[8] The Court interchangeably refers to Plaintiff's appeals as either appeals or grievances.

to the VSP Grievance Office on November 13, 2019.  (Agostini Decl. ¶ 9 & Exh B.)  Plaintiff does not dispute that he filed Log No. VSP-19-B-02294, but he argues that a different appeal (Appeal #2 discussed below) exhausted his remedies.

### (1)   Appeal Log No. VSP-19-B-02294[9]

### Submitted on November 13, 2019

> The food service manager continually fails to follow the approved Kosher menu, to wit: 1.) for the past three weeks we have received "Omlet Bake" on Thursday evening when the menu calls for "Omlet Bake" only every third Thursday and macaroni and cheese on the other weeks. 2.) It has been over a year since we received "Unbreaded Fish Vera Cruz" which we are supposed to receive every third week.  When I wrote about this previously I was told "That's what they send us"  However they will only send what you order.  In short, order the proper meals and they will send them. 3.) The menu calls for salad in the evening meals but we often receive "cabbage" or "Raddishes" neither of which constitutes a "salad", we need to receive what the menu calls for.  4.) Every third Friday we are to receive "Chicken w/Divan Sauce" but there is no consistency as to whether we will receive the proper meals on the proper days.  Substitutions are only allowed but only if approved by the administrator in Sacramento, and they should be the exception not the norm.  It is possible to follow the approved menu, but only if the food service manager is willing to.  5.)  Every third Monday we are to receive "Vegetarian Lazagna" but there is no consistency to this either.  If salad mix is not available, perhaps there is a managerial ineffectiveness.

(ECF No. 22-2 at 94, 96.)

This is a Group Appeal signed by eleven inmates, including Plaintiff A. King.  (Id. at 98.) At the first level of review on December 23, 2019, the appeal was partially granted as to the request to adhere to the approved Kosher menu.  (Id. at 99-101.)  At the second level of review on February 20, 2020, the appeal was again partially granted.  (Id. at 102-104.)  At the third level of review on July 2, 2020, the appeal was denied and the form states, "This decision exhausts the administrative remedies availably to the appellant within CDCR."  (Id. at 92-93.)

Defendants have argued, and the Court agrees, that Plaintiff failed to properly exhaust his remedies with this appeal before filing suit as the third level review was not issued until July 2, 2020, more than six months after Plaintiff filed the Complaint for this action on December 26, 2019.

### b.   Appeal #2

---

[9] Any misspellings or mistakes of grammar are found in the original appeal.

At this stage of the proceedings the parties do not dispute that Plaintiff submitted Group Appeal Log No. VSP-B-19-1285 on June 19, 2019. In their reply to Plaintiff's opposition, Defendants acknowledge this appeal but argue that it fails to meet the exhaustion requirement for Plaintiff's claims in this case because it is merely an appeal of the cancellation of a third group appeal (Group Appeal Log No. VSP-B-19-01146) that was cancelled and not reinstated.

### (2)    Appeal Log No. VSP-B-19-1285[10]

### Submitted on June 14, 2019

> Cancellation of CDC 602 VSP-B-19-01146. Neither 3084.6(f) nor 3085.2(h)(4) apply to the instant appeal. You misunderstood the issue. The Kosher Diet Program is a failure for all in the group. While there are many examples of the failure – only the examples that <u>do</u> <u>apply</u> <u>to</u> <u>all</u> are listed in the group 602. Individual issues were not listed. So you can see that under 3084.2(h) we are required to proceed as a group appeal, as this issue of the Kosher Diet Program has effected each of us, every example has happened to each and every one of us. There can be no Individual or different responses because every example applies to all of us.
>
> By endorcing the original appeal, each signatory to the group appeal, did thereby attest to the suffering all the harms alleged via appeal such that this erroneous cancellation basis misconstrues the factual predicate common among all appellates, and it but a pretext to obstruct/deny proper exhaustion aimed at artificially denying me and my fellow appellants proper legal standing to redress these harms via litigation.

(ECF No. 30-1 at 19.) Appeal Log No. VSP-B-19-01146, referenced in Appeal Log No. VSP-B-19-1285, was submitted on May 26, 2019 as a Group Appeal signed by nineteen inmates including A. King, concerning the Kosher Diet Program at VSP. (ECF No. 27 at 5-8.) At the first level of review on June 3, 2019, this appeal was cancelled because it was not accepted as a group appeal pursuant to CCR tit. 15 § 3084(6)(f).

Appeal Log No. VSP-B-19-01285 was submitted by inmate Nathaniel Gann on June 14, 2019. There is no evidence before the Court showing that it was a Group Appeal. On October 8, 2019, at the third level of review, the appeal was denied and Gann was informed that "[t]his decision exhausts the administrative remedy available to the appellant within CDCR." (ECF No. 30-1 at 23.)

---

[10] Any misspellings or mistakes of grammar are found in the original appeal.

Plaintiff contends that he exhausted his administrative remedies for this case with Appeal Log No. VSP-B-19-01285 because the appeal was completed through the Third Level of review and the third level response states that "[t]his decision exhausts the administrative remedy available to the appellant within CDCR." (Id.)  However, even if Plaintiff showed evidence that this was a group appeal which he had signed, the cancellation decision at the Third Level did not constitute a decision on the merits that would satisfy the exhaustion requirement under Reyes, 810 F.3d 654.  Wilson v. Zubiate, 718 F. App'x 479, 481 (9th Cir. 2017)  CDCR's third-level decision of Appeal Log No. VSP-B-19-01285 does not discuss the substance of Plaintiff's grievance. Id.; See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 501–02, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) ("The original connotation of an 'on the merits' adjudication is one that actually 'pass[es] directly on the substance of [a particular] claim' before the court.") (quoting Restatement (Second) of Judgments § 19, comment at 161 (1980)).  A decision on the merits must discuss the substance of the grievance.  See Wilson, 718 Fed. Appx at 481-82. Therefore, Plaintiff did not exhaust his remedies for the instant lawsuit with Appeal Log No. VSP-B-19-01285.

Based on the foregoing, the Court finds that Plaintiff failed to exhaust his available administrative remedies against Defendants for the claims at issue in this case, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), before filing this lawsuit, nor was Plaintiff excused from the requirement to exhaust remedies. Therefore, Defendants' motion for summary judgment should be granted, and this case should be dismissed.

## VII.   CONCLUSION AND RECOMMENDATIONS

The Court finds, based on the record before it, that Plaintiff failed to exhaust his available administrative remedies for his claims in this case against Defendants, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Plaintiff also failed to submit any competent evidence sufficient to create a genuine dispute for trial whether Plaintiff exhausted his remedies. Therefore, Defendants' motion for summary judgment, filed on January 14, 2022, should be granted and this case dismissed without prejudice.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' motion for summary judgment, filed on January 14, 2022, be GRANTED;

///

2.    This case be DISMISSED, without prejudice, based on Plaintiff's failure to exhaust available administrative remedies before filing suit; and

3.    The Clerk be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __August 11, 2022__       __/s/ Gary S. Austin__
                                   UNITED STATES MAGISTRATE JUDGE